MIKE SERENI & another[1] vs. STAR SPORTSWEAR
MANUFACTURING CORP. & others.[2]

Essex.   March 9, 1987. — July 7, 1987.

Present: GREANEY, C.J., CUTTER, & KASS, JJ.


*Anti-Discrimination Law*, Termination of employment, Age. *Employment*,
Discrimination. *Civil Rights*, Termination of employment. *Contract*,
Employment. *Unlawful Interference*. *Practice, Civil*, Complaint,
Amendment, Summary judgment, Opening statement, Directed verdict.

At the trial of a claim under G. L. c. 151B, for damages for wrongful
discharge from employment by reason of alleged age discrimination,
the judge properly allowed the defendants' motion for a directed verdict
after the plaintiff's opening statement, which made no mention of his
filing a complaint with the Massachusetts Commission Against Discrimi-
nation (MCAD), where, in fact, the record of pleadings and discovery
in the case disclosed that the plaintiff had not made a timely filing with
the MCAD, which was, under G. L. c. 151B, a jurisdictional prerequi-
site to maintaining a civil action. [429-431]
An employee, against whom a verdict was directed at the trial of his claim for
age discrimination under G. L. c. 151B, by reason of his failure to have
made a timely presentment of his complaint to the Massachusetts Commis-
sion Against Discrimination, had no independent right to seek relief by
means of a civil rights claim under G. L. c. 12, §§ 11H and 11I, and a
verdict was properly directed against him on that claim as well. [431-432]
In a civil action where the plaintiff claimed tortious interference with con-
tractual relations arising from his discharge from employment by the
chief executive officer of the corporation that employed him, summary
judgment on that claim was properly granted where no averments of
fact in the complaint, the plaintiff's affidavit, or his answers to inter-
rogatories supported the plaintiff's assertion that the reason for his dis-
charge was malicious and wrongful discrimination based on his age and
ethnic affiliation. [432-433]
A plaintiff in a civil action, against whom verdicts properly had been
directed after his opening statement, was not entitled to reconsideration
of the dismissal of his complaint or to a new trial by reason of a new
theory of recovery, which had not been articulated in any previous stage
of the proceedings. [433-436]

[1] His wife, Agnes Sereni.
[2] Londontown Corp. and James Swann.

CIVIL ACTION commenced in the Superior Court Department on September 25, 1980.

Proceedings on a motion for summary judgment were heard by *Peter F. Brady*, J., and the case was tried before *Katherine Liacos Izzo*, J.

*Frederick T. Golder* for the plaintiffs.

*Mary P. Harrington* for the defendants.

KASS, J. According to his complaint, Sereni suffered wrongful discharge from his job as director of manufacturing by reason of age discrimination. That event is the basis for an assortment of statutory and common law claims against the defendants. Sereni's wife, Agnes, sought damages for alleged loss of consortium.

1. *Claim under G. L. c. 151B, § 9, and G. L. c. 12, §§ 11H and 11I.* The age discrimination claim was decided adversely to the plaintiff on a motion for a directed verdict made after his counsel's opening statement. As pleaded, the claim rested on two statutory footings:[3] G. L. c. 151B, §§ 4 and 9, which make age discrimination in employment unlawful and actionable, and G. L. c. 12, §§ 11H and 11I, the so-called State Civil Rights Act.

(a) In *Melley* v. *Gillette Corp.*, 19 Mass. App. Ct. 511, 512-513 (1985), *S.C.*, 397 Mass. 1004 (1986), it was settled that there is no common law action in Massachusetts based on age discrimination. Complaints so grounded must be addressed first to the Massachusetts Commission Against Discrimination (MCAD), and only after exhaustion of that administrative remedy may there be resort to courts. The *Melley* case was decided five years after the complaint in the instant case was filed and eight months before this case came to trial. See also *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. 538, 541 (1987). The opening by Sereni's counsel made no mention of

---

[3] Sereni had also brought a Federal claim under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. (Supp. IV 1980). On removal to the United States District Court that claim was held to be time barred under 29 U.S.C. § 626 (d) and (e) and dismissed. The remaining State counts were thereupon remanded to the Superior Court. That is the case now before us.

application for relief to the MCAD. We do not purport to state a rule that an opening to a jury must invariably touch on jurisdictional preconditions. Here, however, it is appropriate to read the opening in conjunction with the development of the case in the pleading and discovery phases.

The record left undisputed that Sereni had not filed a complaint with the MCAD until approximately fourteen months after his discharge on September 23, 1978, by Star Sportswear Manufacturing Corp. (Star). Complaints with the MCAD "must be . . . filed within six months after the alleged act of discrimination." G. L. c. 151B, § 5, as appearing in St. 1946, c. 368, § 4. In the absence of a timely complaint to the MCAD, there may be no resort to the courts. See G. L. c. 151B, § 9; *Carter* v. *Supermarkets Gen. Corp.*, 684 F.2d 187, 191 (1st Cir. 1982). We do not take seriously Sereni's contention that the six-month limitation period of G. L. c. 151B, § 5, was tolled until Sereni realized that he had been discriminated against on account of age. The limitation runs from the time of *occurrence* of the act of discrimination. The Legislature opted for a short statute of limitations in discrimination cases, and we may not undo that design by injecting an awareness criterion. An action of discrimination may not necessarily, on a subjective basis, be obvious when it happens, but it is not inherently unknowable. Compare *Gore* v. *Daniel O'Connell's Sons, Inc.*, 17 Mass. App. Ct. 645, 647-648 (1984).

After *Melley*, decided March 21, 1985, there was no doubt that Sereni's age discrimination claim was fatally deficient. When, earlier in the progress of the case, the defendants had moved, in 1982, for summary judgment, *Melley* had not been decided. Summary judgment (or a motion to dismiss under Mass.R.Civ.P. 12[b][1] or 12[b][6]),[4] rather than a motion for a directed verdict, would be the method of choice for moving to dismiss an action on the ground that, on undisputed facts, it cannot prevail.[5] An opening statement, as was observed

---

[4] See *Mathias* v. *Beatrice Foods Co.*, 23 Mass. App. Ct. 915, 916 n.4 (1986).

[5] Directing a verdict on an opening is in some respects similar to granting a motion for summary judgment. Smith & Zobel, Rules Practice § 50.2

in *Douglas* v. *Whittaker*, 324 Mass. 398, 399 (1949),[6] is "a sort of preface as to what the judge and jury are about to hear in the proof of a case." As often as not, the presentation of facts is in outline form. Verdicts are less likely to be directed against a plaintiff on an opening because some subsidiary fact has been omitted than because the facts stated demonstrate that they do not add up to a sustainable cause of action. If the cause is demonstrably lost, the court and jury's time, the public purse, and the defendant's time and purse ought not be wasted. *Ibid.*

The plaintiff, in his brief, sees the motion for directed verdict as "in reality a motion to dismiss," thus sensing the similarity adverted to in note 5, *supra*, between a motion for a directed verdict on the opening and a motion for summary judgment. As a practical matter, a judge in ruling on a motion for a directed verdict on the opening will consider the theory or theories of the action disclosed in the complaint and as further developed by discovery. In the instant case, therefore, the judge properly would have considered not only the words spoken in the plaintiff's opening, but also the record previously made in the case.

(b) The State Civil Rights Act claim is governed — adversely to Sereni — by our decision in *Mouradian* v. *General Elec. Co.*, 23 Mass. App. Ct. at 543. We said there that G. L. c. 12, §§ 11H and 11I (in circumstances which rely solely on age discrimination), "do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under G. L. c. 151B."

---

(1977). Massachusetts Rule of Civil Procedure 50 (a), 365 Mass. 814 (1974), which deals with motions for a directed verdict, does not explicitly permit a motion for a directed verdict on the opening, but the traditional power of a Massachusetts judge to direct a verdict (see *Douglas* v. *Whittaker*, 324 Mass. 398 [1949]) has been retained. See *Gynan* v. *Jeep Corp.*, 13 Mass. App. Ct. 504, 506-509 (1982); Smith & Zobel, *supra* at § 50.4 (a).

[6] This opinion by Justice Ronan contains a particularly well done elucidation of the factors for a judge to consider when acting on a motion for a directed verdict after the opening. There is an encyclopedic listing of the authorities at n.1 on p. 400 of the opinion. See also, as an example of the application of those criteria, *Mounsey* v. *Ellard*, 363 Mass. 693, 694 (1973).

*Ibid.* Moreover, neither the complaint nor the opening alleged any interference by "threats, intimidation, or coercion," as § 11H requires. See the *Mouradian* case at 543 n.5.

2. *Tortious interference with advantageous contractual relationship.* This count, directed solely against James Swann, the president of Star,[7] was decided against Sereni by allowance, before trial, of a motion for summary judgment. It was undisputed on the basis of the pleadings, answers to interrogatories, and affidavits that Sereni had moved in September, 1977, from Chicago, Illinois, where he was gainfully employed, to Lynn to take on the post of director of manufacturing at Star. His experience, relevant to the work with Star, was in making leather clothes. The man who had hired Sereni was Eli Sawyer, then the president of Star. Sawyer died in late February, 1978, five months after Sereni assumed his position. The successor president, James Swann, came aboard in early September, 1978, and fired Sereni very soon thereafter. Why Sereni was fired is sharply disputed by the parties. Sereni says he was jettisoned to make room for younger men and, also, because he is Jewish. Star, speaking through its "acting president" and through Swann, describes Sereni's job performance as gravely deficient. The basis of the tortious interference claim made against Swann seems to be that by reason of his bias against persons over the age of forty, especially if Jewish, Swann maliciously undermined, and then terminated, the employment relationship between Star and Sereni. There is an additional claim that Swann torpedoed Sereni by giving adverse recommendations to potential employers.

As chief executive of Star, Swann enjoyed a qualified privilege to discharge Sereni. Indeed, that would be Swann's duty as a corporate officer if he found Sereni did not measure up to the job. The qualification to the privilege was that Swann

---

[7] One might well ask whether an employee may outflank the obligation to exhaust administrative remedies before the MCAD by alleging tortious interference with contractual relationships against the responsible officer of the employer, when the tortious conduct alleged is also rooted in bias. Compare, however, *Comey* v. *Hill*, 387 Mass. 11, 19-20 (1982); *Mathias* v. *Beatrice Foods Co.*, 23 Mass. App. Ct. 915, 917 (1986).

might not do so malevolently, i.e., for a spiteful, malignant purpose, unrelated to the legitimate corporate interest. See *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 663-665 (1981); *Steranko* v. *Inforex, Inc.*, 5 Mass. App. Ct. 253, 272-273 (1977) (collects the authorities); *Mathias* v. *Beatrice Foods Co.*, 23 Mass. App. Ct. 915, 917 (1986). The most that Sereni musters in his supporting affidavit is that he "believes" age and ethnic bias to have been the cause of his undoing from Star. Expressions of belief, of course, do not rise to the personal knowledge required by Mass.R.Civ.P. 56 (e), 365 Mass. 825 (1974), and a judge does not have to accept an assertion of belief as an assertion of the truth of the fact believed. *Stetson* v. *Selectmen of Carlisle*, 369 Mass. 755, 763 n.12 (1976). *Hartford Acc. & Indem. Co.* v. *Millis Roofing & Sheet Metal, Inc.*, 11 Mass. App. Ct. 998, 999 (1981). Compare *Connors* v. *New England Tel. & Tel. Co.*, 22 Mass. App. Ct. 243, 246 (1986). Sereni's answers to interrogatories state that "[t]here was no reason for my termination. Therefore the only reasonable inference is that I was terminated because of my age or my religion." From neither the complaint, the affidavit, nor the plaintiff's answers to interrogatories do we see a picture bespeaking "animus directed against the plaintiff." *Mathias* v. *Beatrice Foods Co.*, 23 Mass. App. Ct. at 917. See also *Laurendeau* v. *Kewaunee Scientific Equip. Corp.*, 17 Mass. App. Ct. 113, 122-124 (1983). Contrast *Comey* v. *Hill*, 387 Mass. 11, 19-20 (1982), in which a manufacturer caused its representative to breach its business relationship with the plaintiff, allegedly because of his age.[8]

3. *Contract claim.* At all events, Sereni argues, he should have been allowed to go to trial on a contract claim based on a promise by Sawyer that, if Sereni came from Chicago, he could have the job at Star for life.[9] An outline of the necessary

---

[8] Because Serini did not make out a claim for tortious interference with an advantageous contractual relationship, Agnes Serini's consortium claim was also properly dismissed. Compare *Mouradian, supra* at 543-544.

[9] One wonders how Sereni was going to square this with the letter of engagement from Sawyer, countersigned by Sereni, which included the following: "Nothing contained herein is to be construed as a guarantee of employment which shall continue based upon performance and our mutual satisfaction." On a motion for summary judgment, however, a court does not weigh the evidence.

facts appears in the opening statement, to which we return, of Sereni's lawyer. He describes Sereni as seeking reassurance from Sawyer before leaving Chicago permanently and being told:[10] "[D]on't worry about it; you have a job as long as you want. You have proved yourself in the field. You're not a 'Johnny-come-lately.' We know you're good. You can come here. You'll have a job as long as you can perform your job and do it." The opening also described a bonus of $5,000 if Sereni stayed in the employ of Star through the end of 1978, as well as a like bonus for 1979. "Almost immediately after [Swann] took over," the plaintiff's opening continued, "[H]e's [i.e. Sereni] gone. He sent him out. He says we don't need you anymore. He goes out, and he hires a younger person for less money."

A contract for permanent employment is actionable, even if oral, because it may theoretically be performed within a year should the employee die or become incapacitated. *Carnig* v. *Carr*, 167 Mass. 544, 546-548 (1897). The difficulty in the case is that up to the time of the opening, the plaintiff's case had been characterized by the plaintiff as based on age bias with a whiff, in the discovery and summary judgment phases, of ethnic bias. For example, the fifth paragraph (captioned "Jurisdiction") of the complaint announces the action is brought on account of age discrimination in employment and invokes G. L. c. 151B, G. L. c. 12, § 11I, and 29 U.S.C. § 626 (Supp. IV 1980). The factual allegations which follow concern alleged age discrimination. Count 2 of the complaint is the contract claim but alleges age discrimination as the basis of the wrongful discharge. That count failed for the reasons stated in part 1 (a) of this opinion. Any disposition to read count 2 more expansively (see *Charbonnier* v. *Amico*, 367 Mass. 146, 149-154 [1975], and its progeny) as stating also a breach of the promise of permanent employment, irrespective of age discrimination, was neutralized by Sereni's "Request for Rulings of Law in Opposition to the Defendants' Motion for Summary

---

[10] The quoted material was spoken in his opening by Mr. Golder, Sereni's lawyer.

Judgment." Those requests are pitched entirely to age discrimination and Swann's tortious interference. Request no. 5 states that "[i]f a person is terminated because of his age, this gives rise to a common law action in the Commonwealth . . . ." In request no. 10 the plaintiff says he has "alleged in Count II . . . that he was wrongfully terminated because of his age and that this constituted a bad faith termination which gives rise to a common law breach of contract claim." Request no. 14 asserts that "[i]f a particular state has an independent tort or contract remedy available to persons discriminated in their employment because of their age, then they should be entitled to bring claims for relief under those particular causes of action either together with statutory remedies, or independent of them." Sereni's affidavit in opposition to summary judgment and his answers to interrogatories similarly focused on age discrimination and, as something of an aside, mentioned ethnic discrimination.

That Sereni's counsel so structured the case is not astonishing. The decision in *Melley* was to come down three years later. We think Sereni could not, however, without the forewarning of an amended complaint, markedly alter the theory of the case after trial began to one of breach of a contract for permanent employment. In a post-argument letter to the court, Sereni's counsel, Mr. Golder, writes, in explanation, that "[t]he underlying theories have changed to reflect the prevailing judicial winds." Mr. Golder's unfortunate choice of metaphor aside, he puts his finger on the difficulty of his position. When he rose to open, neither opposing counsel nor the judge could fairly have been expected to understand that the plaintiff's case was now to be put on a substantially different footing. Indeed, it is not obvious from the record that Mr. Golder was conscious he was steering a new tack. Thus it was that the defendants' written motion for a directed verdict spoke exclusively to the statute of limitations and subject matter jurisdiction points. The motion was allowed as to count 2, the common law claim count, expressly on the basis of the *Melley* decision. Only thereafter, in a motion for reconsideration of the dismissal of the complaint or, in the alternative, for a new trial, did the plaintiff articulate a theory of breach of a contract of permanent employment.

Had the plaintiff made a motion at that stage of the proceedings to amend the complaint to state a claim for breach of a contract of permanent employment, the trial judge could have weighed the propriety of, and rejected, so late an introduction of a new theory to the case. See *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 291-292 (1977); *Ramos* v. *Selectmen of Nantucket*, 16 Mass. App. Ct. 308, 321 (1983); *Hall* v. *Horizon House Microwave, Inc., ante* 84, 88 (1987). She could more easily reject a new theory of the case, involving potentially different facts, first coherently propounded in the motion for reconsideration made after the plaintiff's opening and after allowance of the motion for a directed verdict. The requirement that complaints and opening statements be read, or listened to, indulgently does not require them to be read in a manner which springs a surprise on the defendant as to the nature of the case about to be made. Cf. *Henchey* v. *Cox*, 348 Mass. 742, 747 (1965); *Marcil* v. *John Deere Indus. Equip. Co.*, 9 Mass. App. Ct. 625, 629 (1980). In the peculiar circumstances of this case, the motion for a directed verdict on the opening was rightly allowed.

> *Order denying motion for reconsideration or for a new trial affirmed.*
>
> *Judgment affirmed.*