**Glenn BUTLER and Farley Flynn, Plaintiffs,**

v.

**PORTLAND GENERAL ELECTRIC COMPANY, an Oregon corporation, Defendant.**

Civ. No. 88–455–FR.

United States District Court, D. Oregon.

Sept. 14, 1990.

Timothy J. Vanagas, Jennings, Vanagas & Lowe, Gresham, Or., for plaintiffs.

Jonathan T. Harnish, Corbett, Gordon, Bullard, Korshoj, Smith & Jernstedt, P.C., Mary Ellen Hoffman, Portland Gen. Elec. Co., Portland, Or., for defendant.

## OPINION

FRYE, District Judge:

The matter before the court is the motion (# 120) of defendant, Portland General Electric Company (PGE), for summary judgment on all of plaintiffs' claims or, in the alternative, for partial summary judgment against plaintiffs' claims for compensatory damages, for emotional distress, and for liquidated damages, and for partial summary judgment against the contract claim of Farley Flynn.

This is an action for age discrimination under the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. §§ 621 *et seq.*, filed by two former employees of PGE, Glenn Butler and Farley Flynn. Flynn also asserts a state law claim for breach of an implied employment contract between him and PGE.

### UNDISPUTED FACTS

Farley Flynn was hired by PGE in 1958 as a meter reader. In 1963, Flynn was transferred to the sales department of PGE. In approximately 1974, the sales department became the energy and field services department, at which time Flynn became a senior energy and field service representative. In approximately 1978, the energy and field services department was

renamed the customer field service department, at which time Flynn's title changed to customer field service representative II (CFS II).

Flynn held the position of CFS II until 1986 when PGE reorganized the customer field service department and other departments within the division operations department. In the reorganization, PGE eliminated numerous job titles, including the job title of Flynn's position. PGE delivered a termination letter to Flynn on April 25, 1986. Flynn applied for positions in the new marketing and customer operations (MCO) department, which replaced the division operations department, but PGE concluded that Flynn was not qualified for any position available in that department. Flynn was terminated by PGE on September 15, 1986. At the time of his termination, Flynn was fifty-two years of age.

Butler began working at PGE as an assistant engineer in 1967. In 1975, Butler transferred to a position in the energy and field services department in the Tualatin Valley Division of PGE, which required engineering and estimating skills. In 1977, Butler transferred to the Western Division, where he held the position of senior energy and field service representative. When the energy and field services department changed its name to the customer field service department, Butler held the position of CFS II.

Butler held the position of CFS II until PGE reorganized the customer field service department in 1986. In the reorganization, PGE eliminated numerous job titles, including the job title of Butler's position. PGE delivered a termination letter to Butler on April 25, 1986. PGE then created a new department called the marketing and sales department. Butler applied unsuccessfully for a position as a sales representative in the marketing and sales department, which is part of the new MCO department. Butler also applied for positions in other departments but was terminated from PGE on September 16, 1986 after his efforts to obtain a new position did not succeed. At the time of his termination, Butler was forty-four years of age.

The reorganization in 1986 was overseen by a committee known as the MCO Reduction in Force (RIF) Committee. The RIF Committee determined whether changes in positions as a result of the reorganization had created new jobs or whether the changes in positions were sufficiently similar to previous positions that employees should be allowed to move from the old position to the new position without bidding and interviewing for the new position. Those positions which were determined to be new were opened to bids from employees throughout PGE.

On April 18, 1986, the RIF Committee compared the new position of supervisor, field sales, with the prior positions of manager, CFS and supervisor, CFS. The RIF Committee concluded that the new position of supervisor, field sales was not comparable to any of the old positions. On April 25, 1986, the RIF Committee compared the new positions of sales associate and sales representative with the prior positions of CFS I and CFS II. The RIF Committee concluded that the new positions were not comparable to either of the old positions.

Butler and Flynn each bid on the new positions of sales associate and supervisor, field sales, but were not chosen by PGE. Of the thirty employees who held the title of CFS before the reorganization, four left PGE without applying for another position. Five of the thirty were hired into positions other than that of sales associate; sixteen were hired as sales associates; and five (including Butler and Flynn) were not hired at all.

While working as a CFS, Flynn received performance appraisal ratings of 105.2% in 1983, 105.25% in 1984, and 105.45% in 1985. While working as a CFS, Butler received performance appraisal ratings of 104.4% in 1983, 105.1% in 1984, and 102.7% in 1985. The Corporate Management Document (Plaintiffs' Exhibit 30) describes job performance between 105 and 115% as "Commendable" and as "Performance that exceeds what is expected of a fully qualified and experienced person in the position." Scores in excess of 115% are described as "Exceptional."

Flynn filed a charge of age discrimination with the Equal Employment Opportunities Commission (EEOC) on January 7, 1987. The EEOC issued a right to sue letter to Flynn on August 26, 1987. Butler filed a charge of age discrimination with the EEOC on April 4, 1987. Butler filed a second charge, alleging retaliation, with the EEOC on July 24, 1987. On April 7, 1988, the EEOC issued a right to sue letter regarding both charges to Butler. This lawsuit was filed on April 27, 1988.

## APPLICABLE LAW

Summary judgment is appropriate only where "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens,* 533 F.2d 429, 432 (9th Cir.1976). Where different inferences can be drawn, summary judgment is inappropriate. *Sankovich v. Life Ins. Co. of N. America,* 638 F.2d 136, 140 (9th Cir.1981).

However, the mere existence of a scintilla of evidence in support of the plaintiff's position is insufficient; there must be evidence from which a jury could reasonably find for the plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

## CONTENTIONS OF THE PARTIES

PGE contends that as a matter of law Butler and Flynn have no claims for age discrimination. PGE argues that Butler's claim was not timely filed with the EEOC; that Butler and Flynn are precluded from raising a claim for "age harassment" be-cause they did not raise it before the EEOC; that Butler and Flynn have no evidence of age harassment; that Butler and Flynn cannot make out a prima facie case of a discriminatory discharge; that PGE had a compelling business necessity for making the organizational changes which affected Butler and Flynn; and that PGE has gone beyond what was required by its legal duty to Butler and Flynn.

PGE contends that the court should grant summary judgment against Flynn's state law claim for breach of an employment contract because Flynn cannot establish an enforceable modification of his at-will employment contract with PGE. Moreover, PGE argues that if the court grants summary judgment against Flynn's age discrimination claim, the court should not exercise pendent jurisdiction over Flynn's state law contract claim.

PGE also contends that as a matter of law Butler and Flynn cannot recover compensatory or liquidated damages. Finally, PGE seeks an award of its reasonable costs, including attorney fees, pursuant to Fed.R.Civ.P. 11 and 54(d).

Butler and Flynn respond that there are genuine issues of fact to be decided as to their claims under the ADEA. Butler argues that PGE has waived its right to assert the statute of limitations against him; that his EEOC filing was timely; and that the principle of equitable tolling should be applied to cure any untimeliness. Butler and Flynn contend that they have established a prima facie case under the theories of disparate impact and disparate treatment; that the subjective nature of the process used by PGE in the selection of the sales team is sufficient to raise an issue of fact as to PGE's affirmative defense of business necessity; and that they have made a sufficient showing of willfulness to make summary judgment on this issue inappropriate.

Flynn also contends that he has presented sufficient evidence to create a genuine issue of material fact as to his claim for

breach of a long term employment contract.[1]

## ANALYSIS AND RULING

### 1. *Motion in Limine*

■ PGE seeks an order precluding Butler and Flynn from offering certain types of evidence, either in response to PGE's motion for summary judgment, or at trial. PGE objects to:

a) testimony regarding purported age discrimination against employees who are not parties to this action and who were not subject to the same circumstances as Butler and Flynn with respect to the reorganization of the customer field service department or the creation of the sales department in 1986;

b) the report prepared by Kay Stepp in 1982 regarding general age demographics in industry (Plaintiffs' Exhibit 43); a memorandum to ESD Managers dated December 12, 1988 (Plaintiffs' Exhibit 23); and like documents referring to societal, industry and company trends;

c) testimony of any witness about his or her general beliefs regarding the actions of PGE or their perceived effects, both in regard to age discrimination, and to the permanence of employment at PGE; and

d) outdated statements of policy by PGE.

Although PGE's memoranda in support of this motion are lengthy, PGE is vague as to the particular evidence covered by these categories, with the exception of a few exhibits and witnesses which are specifically identified. The court finds that at this stage of the proceedings it is inappropriate to make sweeping rulings regarding potentially broad categories of evidence which have been only partially identified.

With respect to the evidence which can be identified with certainty, most of PGE's arguments go to the weight and credibility of the evidence, rather than its admissibility. In addition, PGE relies heavily on arguments regarding the prejudicial effect of some evidence, a consideration which is of limited importance in this motion for summary judgment.

The court will not exclude any of the evidence presented by Butler and Flynn in deciding the motion for summary judgment.

Accordingly, PGE's motion in limine is denied.

### 2. *Motion for Summary Judgment*

#### A. Statute of Limitations

Under the ADEA, a claimant is required to file a charge with the EEOC within 300 days after the alleged discrimination occurs. 29 U.S.C. § 626(d)(2). In claims under the ADEA, the 300–day period begins to run when the employee knows or should have known that an unlawful employment practice has been committed. *Aronsen v. Crown Zellerbach*, 662 F.2d 584, 593 (9th Cir.1981).

PGE argues that Butler's claim accrued no later than April 25, 1986, the date when he received a letter informing him that his position was being eliminated. This date is more than 300 days before Butler filed his claim with the EEOC on April 4, 1987. In contrast, Butler argues that his claim accrued on June 12, 1986, August 6, 1986, or September 15, 1986, all of which dates are within 300 days before he filed his claim. The date upon which Butler learned that he would not be hired into the sales department of the MCO is June 12, 1986. On August 8, 1986, Butler was informed by PGE that his date of separation would be September 15, 1986 unless he found another position in PGE before that time. Butler's termination was effective on September 15, 1986.

The facts regarding these dates are undisputed; therefore, the question of when Butler's claim accrued is a legal issue which may be decided by the court on a motion for summary judgment. Butler's claim has two elements. First, Butler challenges the decision to eliminate the position

---

1. Butler and Flynn state that they are withdrawing their claims for age harassment and for compensatory damages for emotional distress.

of CFS II and the determination that none of the new positions would be equivalent to the position of CFS II. Butler was given clear notice of this determination on April 25, 1986, more than 300 days before he filed a claim with the EEOC. However, Butler also alleges that PGE's failure to hire him for another position was discriminatory. Butler first received notice that he would not be hired for another position on June 12, 1986, less than 300 days before he filed his claim.

Thus, the portions of Butler's claim which relate to his applications for the new positions are not barred by the statute of limitations, but the portions of Butler's claim which relate to the elimination of his old position are barred. Butler contends, nonetheless, that he should be allowed to pursue his entire claim because PGE waived the defense of the statute of limitations by failing to raise it in any pleadings.

PGE contends that the limitations period for ADEA claims is jurisdictional and cannot be waived. PGE relies on *Vinson v. Ford Motor Co.*, 806 F.2d 686, 688 (6th Cir.1986), which states that "the filing of a charge with the EEOC is a jurisdictional prerequisite to the filing of a civil action under ADEA." However, *Vinson* concerns a situation where a claimant failed to raise certain issues in his EEOC charge, and does not address issues relating to the statute of limitations.

Butler relies on *Haskell v. Washington Township*, 864 F.2d 1266, 1273 (6th Cir. 1988), in which the court held that the defendant waived the defense of the statute of limitations in an action under 42 U.S.C. § 1983 by failing to raise it in the pleadings. The Ninth Circuit used similar language in an action under the ADEA, *Naton v. Bank of California*, 649 F.2d 691, 695–96 (9th Cir.1981), stating: "Decisions of other circuits strongly support the argument that the limitations periods in section 626(d)(1) & (2) are not jurisdictional requirements, but are of the nature of statutes of limitations, subject to equitable modification."

■ Therefore, the court finds that a party may waive the defense of the statute of limitations under the ADEA by failing to assert the defense in its pleadings. However, the courts do not apply such waiver strictly, but consider factors, such as the length of time that has passed and any prejudice to the other parties. *Haskell, supra,* 864 F.2d at 1273.

■ In this case, PGE did not raise the defense of the statute of limitations in its answer. In July, 1989, PGE showed counsel for plaintiffs a proposed amended answer which asserted the defense of the statute of limitations, but PGE never moved for leave to file the amended answer. PGE argues that it should be granted leave to assert the defense as Butler has been aware of it for over a year. Butler argues that he was led to believe that PGE had abandoned the defense, and thus did not pursue discovery on the issue.

Butler also contends that the doctrine of equitable tolling or estoppel should be applied to extend the statute of limitations for his claim. In *Aronsen, supra,* 662 F.2d at 595, the Ninth Circuit states that the doctrine of equitable estoppel may be applied in ADEA cases where an employee is inhibited from filing a claim for fear of losing severance or other benefits, where the employer's behavior intentionally or foreseeably lulled the employee into delaying the filing of a claim, or where the employee was led to believe by company action that the termination was not irrevocable. 662 F.2d at 595.

The *Aronsen* court stated that "summary judgment seldom will be appropriate when tolling is in issue." 662 F.2d at 595. Although Butler knew on April 25, 1986 that the termination of his position was irrevocable, there are legal and equitable issues relating to whether Butler was inhibited from pursuing his claim or lulled into delaying his claim by the possibility that he would be hired for the new position of sales associate.

Therefore, PGE's motion for summary judgment is denied as to the issue of the statute of limitations.

## B. Age Discrimination

A plaintiff alleging discrimination under the ADEA may proceed under two theories of liability: disparate treatment or disparate impact. Proof of disparate treatment requires a showing that the employer treats some employees less favorably than others because of their age. *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir.1990). However, under the disparate impact theory, the plaintiff need not show a discriminatory motive or intent, but must establish that a facially neutral employment practice has a discriminatory impact on older employees. *Palmer v. United States*, 794 F.2d 534, 536 (9th Cir.1986).

█ In order to establish a prima facie case of disparate impact under the ADEA, the plaintiff must: 1) identify the specific employment practices or selection criteria being challenged; 2) show disparate impact on the basis of age; and 3) show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their age. *Rose, supra,* 902 F.2d at 1424. The evidence must show statistical disparities which are sufficiently substantial that they raise an inference of causation. *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 2789, 101 L.Ed.2d 827 (1988).

Once a plaintiff establishes a prima facie case of disparate impact, the burden shifts to the defendant to produce evidence that its practices are based on legitimate business reasons, such as job-relatedness or business necessity. *Rose, supra,* 902 F.2d at 1424. Thereafter, the plaintiff must show that other tests or selection devices without a similarly undesirable discriminatory effect would also serve the employer's legitimate interests. *Id.*

Butler and Flynn claim that a subjective interview process was used to evaluate applicants for the sales associate position and that this process is the specific employment practice or selection criterion being challenged. PGE concedes that the interview was based in part upon subjective elements. PGE contends, however, that Butler and Flynn have not presented adequate evidence of statistical disparities based on age or evidence that the subjective interview process caused the exclusion of applicants because of their age.

The statistical evidence produced by Butler and Flynn is presented in the affidavit of an expert witness, Dr. James M. Norborg. Dr. Norborg is an industrial/organizational psychologist who has testified on statistical issues in discrimination cases in the District of Oregon on six occasions. Dr. Norborg compares the experience of the twenty-six employees in CFS I and CFS II positions who attempted to secure another position with PGE after the CFS I and CFS II positions were eliminated. Of the twenty-six employees, sixteen were given one of the sales team positions, five were given another position with PGE, and five (including Butler and Flynn) were involuntarily terminated.

Dr. Norborg compares the average age of the twenty-one retained employees (39.0 years) with the average age (48.6 years) of the five terminated employees. Dr. Norborg finds that the probability of selecting a random sample of five representatives with an average age greater than or equal to 48.6 years from a pool of twenty-six persons is one in twenty. In another analysis, Dr. Norborg compares the average age of the twenty-one CFS employees who interviewed for a sales team position (40.1 years), with the average age of the sixteen employees who were given sales positions (37.5 years), and the average age of the five terminated employees (48.6 years). Dr. Norborg finds that the probability of selecting a random sample of five representatives with an average age greater than or equal to 48.6 years from this pool is one in twenty-five. Dr. Norborg concludes that these disparities in average age are statistically significant.

Butler and Flynn also contend that it is significant that the sixteen CFS employees who were offered jobs earned an average of $38,367.35 per year, while the five CFS employees who were terminated earned an average of $41,930.40 per year. Both Butler and Flynn earned more than the average salary of the sixteen CFS employees who were offered jobs. Butler and Flynn

further contend that the performance appraisal scores for 1985 of the sixteen successful applicants were lower overall than the performance appraisal scores for the five unsuccessful applicants.

PGE is critical of the statistical analysis of Butler and Flynn, contending that it is unorthodox, slanted and incomplete. PGE questions why Butler and Flynn did not analyze all of the employees who applied for sales positions, and why Butler and Flynn did not analyze the other positions for which they applied. PGE argues that Butler and Flynn did not take into consideration the varying skills of the applicants and the skills required for the new positions. PGE also points out several factual mistakes in the figures used by Dr. Norborg.

It is undisputed, however, that seventy-seven employees applied for the sales positions and sixty-eight employees were interviewed for these positions. Case law indicates that the proper method for assessing statistics in discrimination cases is to examine the entire applicant pool. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989). The evidence shows that twenty-one of the seventy-seven applicants (27.3%) were forty years of age or over. Job offers were extended to thirty-four of these applicants. Ten of the thirty-four successful applicants (29.4%) were forty years of age or over, a higher percentage than in the applicant pool.

Butler and Flynn confine their analysis to the twenty-one applicants who held a position either as a CFS I or a CFS II. Their analysis does not distinguish between these positions, although the positions require somewhat different skills and duties. The use of average age as a basis for statistical analysis in groups as small as five or even twenty-one persons is also questionable. *See Simpson v. Midland–Ross Corp.*, 823 F.2d 937, 943–44 (6th Cir. 1987).

In *Penk v. Oregon State Bd. of Higher Educ.*, 48 FEP Cases 1724, 1849–58 (D.Or. 1985) (J. Frye), this court found that it is inappropriate to compare groups without taking into consideration the effect of relevant variables, such as differences in employee skills and job duties, and that statistical models which fail to take into account the interactive effect of variables are seriously flawed. The court found that it is necessary to examine the techniques and assumptions upon which a statistical model is based and to reject statistical models which are not based on valid assumptions and methods. *Id.*

The court finds that the statistical analysis used by Butler and Flynn is flawed and unreliable. Therefore, the evidence of statistical disparities produced by Butler and Flynn is not sufficiently probative to raise the inference that the interview procedure for the position of sales associate caused applicants to be rejected on the basis of age. Therefore, Butler and Flynn have failed to establish a genuine issue of material fact as to one of the essential elements of a claim for age discrimination based on disparate impact.

An employee may establish a prima facie case of age discrimination under the disparate treatment theory by showing that 1) he was a member of the protected class (age 40–70 years); 2) he was performing his job in a satisfactory manner; 3) he was discharged; and 4) he was replaced by a substantially younger employee with equal or inferior qualifications. *Palmer, supra*, 794 F.2d at 537.

Once the employee has established a prima facie case, the burden shifts to the defendant to come forward with legitimate, nondiscriminatory reasons for its actions. *Thompson v. Goodyear Tire & Rubber Co.*, 51 FEP Cases 943, 946, 1989 WL 141767 (D.Or.1989) (J. Frye). If the defendant produces such evidence, the plaintiff must demonstrate that the reason given was merely pretextual, and that the action was in fact motivated by age discrimination. *Id.*

In *Rose, supra*, the Ninth Circuit states that where a discharge results from a general reduction in the work force, the plaintiff does not have to prove replacement by a younger employee as part of the prima facie case, but instead must "show through

circumstantial, statistical, or direct evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination." 902 F.2d at 1421. However, in a reduction-in-force case, there is no adverse inference to be drawn from an employee's discharge if his position and duties are completely eliminated. Therefore, the employee must also show that the employer had a continuing need for his skills and services, i.e., that his various duties were still being performed. *Id.* The Ninth Circuit affirmed summary judgment in favor of the employer in *Rose*, holding that the plaintiffs failed to make out a prima facie case under the ADEA.

■ There is no dispute that Butler and Flynn are members of the protected class of employees. PGE does not seriously dispute that Butler and Flynn were performing their jobs in a satisfactory manner at the time of their termination, and Butler and Flynn have presented evidence which would, at the least, create an issue of fact as to the adequacy of their performance. There is also no dispute that Butler and Flynn were discharged from their jobs.

The crucial issue is whether the positions held by Butler and Flynn and the duties performed by them were completely eliminated in the reorganization, or whether PGE showed a continuing need for their skills and services by hiring others to perform equivalent (although retitled) positions. If there is a genuine issue of fact on this point, the court must also consider whether there is any evidence that the discharge occurred under circumstances giving rise to an inference of age discrimination.

Butler and Flynn have submitted evidence that their positions as CFS II's were essentially sales positions, and that many of the same skills and services required in the new sales associate positions are the same skills and services required by the CFS II positions. PGE has presented evidence that the sales associate positions require qualifications and skills which were not required in the CFS positions. However, such evidence is not conclusive and creates a disputed issue of material fact.

A jury could reasonably find from the evidence that the position of CFS II and the position of sales associate are equivalent positions.

Therefore, the court must determine whether Butler and Flynn have produced evidence that their discharge occurred under circumstances giving rise to an inference of age discrimination. Butler and Flynn contend that their evidence is sufficient to give rise to an inference of the intent of PGE to discriminate on the basis of age. Butler and Flynn point to evidence that the goal of PGE in the reorganization was to cut down costs; that the selection process used to evaluate applicants for the new positions was subjective; that the selection process did not take into consideration the performance appraisals of the applicants; that various witnesses had incomplete or inconsistent recollections regarding the selection process; and that various employees of PGE made comments showing bias on the basis of age. Butler and Flynn also point to the statistical evidence discussed above.

However, the only *direct* evidence of age bias or an intent to discriminate on the basis of age is the comments alleged to have been made by employees of PGE. Some of these comments include the word "old," but when read in context they do not support an inference of age discrimination. For example, a demographics report written in 1982 by Kay Stepp, an executive in the MCO Department, merely makes general observations regarding the age of the population and certain trends in employment which may result from an "aging" work force (Plaintiffs' Exhibit 43).

Plaintiffs' Exhibit 23, a report written in 1988, contains the following passage:

OLD TO NEW—We have retired old organizational networks (people as well as the buildings), and have abandoned old traditions and events that reinforced who we are and what we value. The perception is that we took away the old without replacing it with anything new; a ship adrift. The new replacement may be contained in the business plan, but, we have not developed an interpretation that

satisfies our employees need for comfort in the new. Solving this kind of problem takes lots of time to do really well.

This passage cannot reasonably be interpreted to refer to a policy of terminating older employees; the plain meaning of old in this passage refers to the old organizational structure. Similarly, comments to the effect that employees need to abandon old and develop new ways of thinking, and that a lean and mean force is needed do not give rise to an inference of discriminatory intent.

The remaining comments recounted in Butler and Flynn's evidence are either hearsay or based on the speculative, unsupported beliefs of persons who were not the decisionmakers at PGE during the reorganization. Such evidence is not sufficient to create a genuine issue of material fact regarding discriminatory intent.

Finally, as discussed above, the statistical analysis used by Butler and Flynn is flawed, and therefore does not support an inference that the interview process caused a disparate impact on older employees. The statistical evidence also does not support an inference of discriminatory intent on the part of PGE. As discussed above, the proportion of successful applicants for the sales positions who were forty years of age or older was somewhat greater than their proportion in the applicant pool.

Therefore, Butler and Flynn have not submitted evidence which creates a genuine issue of material fact regarding discriminatory intent.

In addition, Butler and Flynn have not submitted evidence which could support an inference that PGE's affirmative defense of business necessity was a pretext to conceal discrimination on the basis of age.

Accordingly, PGE's motion for summary judgment against the claims of Butler and Flynn under the ADEA is granted.

### C. The Contract Claim of Flynn

Flynn alleges that early in his career with PGE, he entered into an implied contract for long-term employment, which prevented PGE from terminating him without cause. Flynn asserts that shortly after he was hired in 1958, he was told by Ron Curts, the Oregon City Division Manager, that as long as he did his job properly, he could expect employment with PGE as long as he desired, and that these statements were reiterated at a later time when Flynn was considering offers of employment from outside PGE. Flynn states that in the late 1960's, Vic Wilson, the CFS manager, and Bill Lowry, the Gresham Division Manager, praised his outstanding performance and told him that because of it he would have a job at PGE as long as he wanted. Flynn contends that these promises were affirmed by statements in employee handbooks between 1965 and 1975, which state: "Welcome to PGE. We hope the association will prove both permanent and rewarding."

■ The general rule in the State of Oregon is that employment contracts are at will unless otherwise modified. *Patton v. J.C. Penney Co.*, 301 Or. 117, 719 P.2d 854 (1986). Statements in the personnel handbooks or employee manuals of companies can create implied contracts requiring just cause for termination. *Yartzoff v. Democrat–Herald Publishing Co.*, 281 Or. 651, 576 P.2d 356 (1978). However, subsequent editions of such handbooks may supersede and modify such contracts, eliminating the just cause requirement. *Brossard v. IBM Corp.*, 5 IER Cases 575, 576, 1990 WL 54574 (D.Or.1990) (J. Frye). The evidence in this case shows that in 1985, PGE distributed an employee handbook which specifically states that employment is at will and can be terminated at any time by either party. (Exhibit 1 to Stepp Affidavit).

■ Furthermore, the statements quoted by Flynn from previous handbooks and the statements made by various superiors during the early years of his employment do not support the claimed implied contract. Such a contract cannot be created by mere casual or unauthorized comments. *Thompson v. Goodyear Tire & Rubber Co.*, *supra*, 51 FEP Cases at 947. Flynn acknowledged in his deposition testimony that PGE had the right to transfer employees, to assign work as it considered necessary, and

to evaluate and terminate inferior employees. (Flynn Deposition, pp. 72–73, 76, 77). These admissions are inconsistent with the terms of the alleged implied contract.

Therefore, as a matter of law, the evidence submitted by Flynn is not sufficient to support a finding that he had an implied contract with PGE that required cause for his termination. Accordingly, PGE's motion for summary judgment against Flynn's claim for breach of contract is granted.

### D. Liquidated Damages

The claims of Butler and Flynn for liquidated damages are part of their claims under the ADEA, and therefore are rendered moot by the court's decision to grant summary judgment for PGE on the claims of Butler and Flynn under the ADEA.

### E. Fees and Costs

PGE seeks an award of its reasonable costs, including attorney fees under Fed.R. Civ.P. 11 and 54(d), on the grounds that the claims of Butler and Flynn were brought in bad faith, wantonly or solely for oppressive purposes. While the claims of Butler and Flynn are not meritorious, they are not patently frivolous. PGE has not submitted evidence which would support a finding that Butler and Flynn brought their claims in bad faith, wantonly or solely for oppressive purposes.

Therefore, PGE's request for an award of costs and fees is denied.

### CONCLUSION

PGE's motion in limine (# 110) is denied. PGE's motion for summary judgment (# 120) is granted as to the entire action. PGE's request for an award of fees and costs (also # 120) is denied.