Hinkle, J.
Plaintiff William J. Forti brings this action against defendant Massachusetts Institute of Technology (MIT) for damages arising out of plaintiffs employment and subsequent layoff. Plaintiff alleges age and handicap discrimination; retaliation; violation of the Massachusetts Equal Rights Act, G.L.c. 93, §103 and the Massachusetts Civil Rights Act, G.L.c. 12, §§11H, 111; intentional and negligent infliction of emotional distress; and breach of good faith and fair dealing and contract. Carol Forti claims loss of consortium.[3]
MIT now moves for summary judgment on all counts. For the reasons discussed below, the motion is denied in part and allowed in part.
BACKGROUND
The summary judgment record, considered in favor of the plaintiffs as the nonmoving party, indicates the following. In 1963, MIT hired plaintiff as an electrician in its Department of Physical Plant. In 1972, plaintiff became foreman of the Electric Shop where he supervised about 30 men. In 1975, plaintiff was electrocuted while at work. After several months of hospitalization and rehabilitation, plaintiff returned to his position. As a result of the accident, plaintiff experienced chronic pain as well as occasional prolonged and intractable hiccups.[4]
During 1980, defendant Thomas Vacha, then Superintendent of Building Operations, and defendant Paul Blanchard, then Electrical Engineering assistant, informed plaintiff that his medically-related absences would not be tolerated, and that if his attendance was not “close to perfect,” he would be fired. In March 1982, Vacha demoted plaintiff from foreman to supervisor of the Electric Shop, reducing his supervisory responsibilities. In March 1985, defendant Jacobo Kredi became Manager of Electrical Services and thus plaintiffs immediate supervisor. Plaintiff alleges that Kredi harassed him by paging him to return to his office from the field, refusing to let him leave the office for lunch, interrupting his lunch, denying his requests to attend educational seminars and giving him negative evaluations and small salary increases.
Plaintiff complained about this conduct to MITs employee ombudsman, Dr. Mary Rowe. In October 1987, Vacha removed plaintiff from his position in the Electric Shop and required him to consult with Ronald Fleming, Chief of Social Work Services.
*627 In November 1987, Forti was relocated from his office to a basement, isolated from other employees and threatened with termination. He consulted with Fleming about the situation who suggested in a memorandum dated December 7, 1987 that Vacha permit the flexible use of Forti’s sick leave.
During 1988, plaintiff became one of four coordinators on an energy rebate program which was intended to reduce electricity demand by installing energy-efficient fixtures. While in this position, plaintiff stopped reporting to Vacha, who left MIT in September 1988, and began reporting to A1 Davis and George Kilmarx. By the beginning of 1990, plaintiff was the only one of the project coordinators still on the project, and there was no longer enough energy rebate work to keep him occupied full-time. As a result, the administrators at the Physical Plant looked for other positions for plaintiff. His supervision had been transferred to defendant Moore who attempted to keep plaintiff employed by assigning him to maintenance work on MIT’s steam and water utility systems. Plaintiff protested this assignment as being outside his expertise.
In the spring of 1990, plaintiff became responsible for a manhole survey project which involved mapping the high voltage cables that carry electricity across the MIT campus. Moore assigned plaintiff as project coordinator with responsibility for scheduling and overseeing completion of the project. There were also two electricians on the project: James Sullivan from the Electric Shop and an outside high voltage electrician hired specifically for the manhole project. A temporary MIT employee, Michael Livshits, provided general assistance and did drafting work with a Northeastern co-op student.
Plaintiff expressed dissatisfaction with the manhole survey project. He complained to management that the manholes were dangerous because they contained asbestos and oil spills. Moore ignored his concerns. Plaintiff did not report to work on the day after he was given the assignment, resulting in a delay in the project kickoff meeting. After plaintiff was absent for several days, Moore became concerned about the effect of his absence on the project’s progress. Since Moore was unable to learn when plaintiff would return to work, he decided to remove him from the project and assign Blanchard the role of coordinator.
Moore informed his supervisor, defendant Thomas Shepard, that no other positions were available in Moore’s department for plaintiff. Moore, Shepard and defendant Harmon E. Brammer investigated other possibilities for plaintiffs continued employment in the Physical Plant. At that time, the small amount of remaining coordination work on the energy rebate program was handled by George Kilmarx, the project manager. Although several large construction projects were in the planning stages, no immediate or foreseeable need existed for a full-time employee with plaintiffs qualifications to work on those projects. Nor was there any supervisory opening in the Electric Shop at that time. Thus, Brammer decided that plaintiff should be terminated. Defendant William Dickson approved the decision.
MIT policy provides that laid-off employees receive a paid notice period dependent on the length of the employee’s service. Under this policy, plaintiff was given eight months notice. Thus, although his last day of work was July 26, 1990, he received full pay and benefits through April 5, 1991.
Plaintiffs layoff letter instructed him to contact MIT’s personnel office for assistance in finding new employment, at MIT or elsewhere. Other than providing this kind of assistance, MIT has no “recall” policy for nonunion staff like plaintiff. The laid-off employee is primarily responsible for finding a new job at MIT or elsewhere. Plaintiff never contacted the personnel office for assistance in finding a job, nor did he apply for any position at MIT.
Plaintiff filed a complaint with the Massachusetts Commission Against Discrimination on January 22, 1991 and commenced this action on June 11, 1992.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Cassessov. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, “and [further] that the moving party is entitled to judgment as a matter of law.” Pederson v. Time. Inc., 404 Mass. 14, 16-17 (1989). A party moving for summary judgment who does not have the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence that negates an essential element of the opponent’s case or “by demonstrating that proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); accord, Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “If the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts which would establish the existence of a genuine issue of material fact in order to defeat [the] motion.” Pederson, supra, 404 Mass, at 17. “]T]he opposing party cannot rest on his or her pleadings and mere assertions of disputed facts to defeat the motion for summary judgment.” LaLonde v. Eisner, 405 Mass. 207, 209 (1989).
I. AGE AND HANDICAP DISCRIMINATION
Plaintiff alleges that defendants fired him because of his age and handicap in violation of G.L.c. 15 IB, §§4(1B), 4(16) and 4(4A). Massachusetts courts follow a three-stage order of proof in applying G.L.c. 151B. Blare v. Huskey Injection Molding Systems Boston, Inc., 419 *628 Mass. 437, 440 (1995), citing VJheelnck College v. Massachusetts Comm’n Against Discrimination, 371 Mass. 130, 134-36 (1976). The plaintiff has the burden of demonstrating a prima facie case of discrimination. The employer can rebut this presumption by articulating a legitimate reason for its decision. Id at 441-42. At the third stage, the plaintiff must demonstrate that the employer’s articulated reasons are a pretext or that the actual motivation was discriminatory. Blare, 419 Mass, at 441-45.
For purposes of this motion only, defendants concede that the plaintiff can demonstrate a prima facie case of discrimination but assert that the plaintiff was laid off because no work was available for him in July 1990. Plaintiff contends that work was available. He supports his contention with evidence that shortly before his discharge, MIT hired Michael Livshits, a younger employee who continued working at MIT for one and a half years after plaintiffs discharge. He also supports his claim with evidence that Kilmarx, manager of MIT’s Energy Rebate projects during the last two years of plaintiffs employment, believed that plaintiff was going to be “a maj or player” on a rebate project planned to begin as early as six weeks after plaintiffs termination. In light of this evidence, issues of fact exist as to whether MTTs stated reason for terminating plaintiff was pretextual, which precludes summary judgment on this claim.
II.RETALIATION
Defendants argue that the only potential basis for a retaliation claim is plaintiffs demotion by Vacha in October 1987, which followed plaintiffs grievance to Dr. Rowe. Defendants claim this theory is time-barred under G.L.c. 151B, §5. Because plaintiff contends that he was demoted as a result of his “whistle-blowing” in the Spring of 1990, a claim that is not time-barred, the retaliation claim survives summary judgment.
III.MASSACHUSETTS EQUAL RIGHTS ACT
Defendants argue that plaintiffs claims under G.L.c. 151B preclude his claim under the Massachusetts Equal Rights Act, G.L.c. 93, §103.[5] I agree
The Equal Rights Act was enacted on August 2,1990, after the date of Forti’s layoff notice. Because the Act created new substantive rights it does not apply retroactively and therefore cannot serve as a basis for plaintiffs recovery. Butler v. RMS Technologies, Inc., 741 F.Supp. 1008,1012 (D. Mass. 1990) (holding that the Massachusetts Equal Rights Act cannot be applied retroactively). In addition, where G.L.c. 151B is applicable, it “provides the exclusive remedy for employment discrimination not based on preexisting tort law or constitutional protections.” Charland v. MuziMotors, Inc., 417Mass. 580,586 (1994); Agin v. Federal White Cement. Inc., 417 Mass. 669, 672 (1994).
IV.MASSACHUSETTS CIVIL RIGHTS ACT
Defendants also argue that plaintiffs c. 15 IB claim precludes his claim under the Civil Rights Act, G.L.c. 12, §§11H and 111.[6] The Appeals Court has twice concluded that no right of action exists under the state Civil Rights Act for age discrimination in employment. Serení v. Star Sportswear Manufacturing Corp., 24 Mass.App.Ct. 428, 431-32 (1987); Mouradian v. General Electric Co., 23 Mass.App.Ct. 538, 543 (1987). In Mouradian, the Appeals Court stated that although some types of wrongful discharge not redressed by c. 15 IB may give rise to an action under the Massachusetts Civil Rights Act:
[t]his is not such a case, as the only “right [] secured by the... laws of the commonwealth” (the operative words of c. 12, §11H, in this instance) is the right which could have been enforced under the procedures established by c. 15 IB. In the circumstances, G.L.c. 12, §§11H and 1II, do not create an independent right to vindicate an alleged wrong which might have been the subject of investigation and possible vindication under G.L. c. 151B.
24 App.Ct. at 543.
Since the legislature expressly included handicap discrimination in c. 151B, I rule that the holdings of Mouradian and Serení should be extended to handicap discrimination in employment. My conclusion is buttressed by Conway v. Boston Edison Co., 745 F.Supp. 773, 779-80 (D.Mass. 1990), where Judge Skinner, relying in part on Mouradian and Serení, held that a handicapped employee’s discrimination claim under the Massachusetts Civil Rights Act was precluded by chapter 151B. See Hameed Akhtar v. Digital Equipment Corp., 1 Mass. L. Rptr. No. 227, 228 (Middlesex Co. October 8, 1993) (Butler, J.) (Chapter 15 IB provides exclusive remedy for employment discrimination claim based on handicap).
V.EMOTIONAL DISTRESS
A claim against an employer for emotional distress stemming entirely from intentional or negligent acts occurring during employment is barred by the exclusivity provision of the Worker’s Compensation Act, §24.[7] Catalano v. First Essex Savings Bank, 37 Mass App.Ct. 377, 378-82 (1994) (barring claims of negligent infliction of emotional distress against employer); Foley v. Polaroid Corp., 381 Mass. 545, 550 (1980) (barring claims of intentional tort against employer). While plaintiff concedes that his emotional distress claim against MIT is barred by the Workers Compensation Act, he argues that the acts of the individual defendants do not fall within the scope of their employment and therefore are outside the Workers Compensation Act.
Plaintiff names seven individual defendants in his complaint. On the record before me I find that defendants Blanchard and Kredi had no contact with the plaintiff within the three years before plaintiff filed his action with the MCAD. Thus, any claim against either defendant for the tort of infliction of emotional distress, either intentional or negligent, is time-barred.
As to defendants Brammer, Dickson and Shepard, their complained of conduct is confined to their inves *629 tigation of alternative positions for the plaintiff and their decision to terminate plaintiff for lack of work. “A claim against a fellow worker for the commission of an intentional tort will be barred by the exclusivity clause of the Worker’s Compensation Act, ... if committed within the course of the worker’s employment and in furtherance of the employer’s interest.” Catalano v. First Essex Savings Bank, 37 Mass.App.Ct. 377, 381 (1994), citing O’Connel v. Chasdi, 400 Mass. 686, 690-91 (1987). These defendants’ actions fall within the scope of their employment because the conduct relates wholly to their positions as decision-makers or supervisors. As a result, I rule that the plaintiffs’ claims against Brammer, Dickson and Shepard for negligent infliction of emotional distress are likewise precluded.
That leaves defendants Roger Moore and Thomas Vacha. Moore allegedly required plaintiff to tag high voltage cables under conditions similar to those when he was electrocuted and to ignore safety and health concerns in the manholes. Whether this conduct falls within the scope of Moore’s employment is a disputed fact, precluding summary judgment as to Moore. The emotional distress claims against Vacha must also go forward. While Vacha’s demotion of plaintiff in November 1987 is time-barred, Vacha’s subsequent conduct toward plaintiff until Vacha left MIT in September 1988 is actionable.
VI.BREACH OF EMPLOYMENT CONTRACT
While plaintiff makes no claim arising out of a written employment contract, he alleges the existence of a contract implied from the language of two employee handbooks, from MITs status as a Federal contractor obligated to adhere to the Rehabilitation Act of 1973, 29 U.S.C. §§701-94, or from defendants Shepard and Brammer’s remarks that there would always be a place for plaintiff at MIT.
An employer’s written policies and employee handbooks rarely create an enforceable contract between employer and employee. Jackson v. Action for Boston Community Development Inc., 403 Mass. 8, 13 (1988). Determinative factors include: (1) whether the employer retained the right to modify the policies; (2) whether the manual indicated in some way that its import was only for guidance; (3) whether the employee negotiated any of the terms he seeks to enforce contractually; (4) whether a term of employment is stated; and (5) whether the employee signed or otherwise manifested his assent to abide by the policies. Jackson, 403 Mass, at 14-15.
On the summary judgment record, plaintiff has offered no evidence to substantiate any such factor. First, language in both employee handbooks expressly reserves MIT’s right to change the provisions. Second, one of the manuals, entitled Policies and Procedures, states that its purpose is to set forth the policies and procedures that guide MIT faculty and staff. The other handbook, entitled Personnel Manual, expressly states that its provisions “are not conditions of employment.” Third, plaintiff concedes that he did not negotiate any of the manuals’ terms with MIT. Fourth, neither manual contains a term of employment. Finally, plaintiff provides no evidence that he signed a receipt for the handbook or manifested his assent to abide by the policies.
As to plaintiffs claim that defendants Shepard and Brammer promised there would “always be a place at MIT" for Forti, I rule that such remarks, standing alone, do not create a lifetime employment contract. See Butler v. Portland General Elec. Co., 748 F.Supp. 783,792-93 (D. Ore. Í990); Lucey v. Hero International Corp., 361 Mass. 569, 574 (1972); Held v. Zamparetti, 13 Mass.App.Ct. 957, 958 (1982) (rescript).
VII.BREACH OF GOOD FAITH AND FAIR DEALING
Plaintiff alleges two ways in which the defendants violated the covenant of good faith and fair dealing by terminating him in violation of public policy. Each claim fails as a matter of law.
First, the allegation that plaintiff was terminated because of his age or handicap, even if true, fails because employment discrimination is not actionable under a public policy theory. Serení v. Sportswear Mfg. Corp., 24 Mass.App.Ct. 428, 429 (1987); MeUey v. Gillette Corp., 19 Mass.App.Ct. 511, 512-13 (1985), affd., 397 Mass. 1004 (1986).
Second, plaintiff argues that he was discharged in retaliation for his complaints to management about the manhole survey project, in violation of some unspecified public policy. Assuming the plaintiff could prove a causal connection between his alleged complaints and his termination, he fails to state a claim for public policy violation. Redress is available on such a claim only for employees who are terminated for asserting a legally guaranteed right, for doing what the law requires or for refusing to do that which the law forbids. Wright v. Shriners Hospital for Crippled d Children, 412 Mass. 469, 472-73 (1992); Smith-Pfejfer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149-50 (1989). On the summary judgment record, that is not the situation here.
VIII.THE LOSS OF CONSORTIUM CLAIM
Recovery for loss of consortium requires proof of a tortious act which causes injury to one’s spouse. Mouradian, 23 Mass.App.Ct. at 544; see Diaz v. Eli Lilly & Co., 364 Mass. 153, 163-67 (1973). There is no cause of action for loss of consortium based on statutory discrimination claims. Tauric v. Polaroid Corp., 716 F.Supp. 672, 674 (1989). Carol Forti’s claim is entirely derivative of her husband’s emotional distress claims. Because the infliction of emotional distress claim survives summary judgment soley as to Moore and Vacha, the consortium claim remains alive only as to these defendants.
*630 ORDER
For the foregoing reasons, it is hereby ORDERED that defendants, motion for summary judgment as to age and handicap discrimination and retaliation is DENIED as to all defendants. The motion for summary judgment as to the Massachusetts Equal Rights Act, the Massachusetts Civil Rights Act, the covenant of good faith and fair dealing and employment contract is ALLOWED as to all defendants. The motion for summary judgment on the claim of intentional and negligent infliction of emotional distress and loss of consortium is ALLOWED as to all defendants except Roger Moore and Thomas Vacha, as to whom it is DENIED.

Plaintiffs theories of liability are not set forth as separate counts in his complaint.

For purposes of this motion, defendants do not dispute plaintiffs medical condition.

General Laws c. 93, § 103(a) provides “any person within the Commonwealth, regardless of handicap or age . . . shall, with reasonable accommodation, have the same rights as other persons to make and enforce contracts . . .”

General Laws c. 12, §11H provides that the attorney general may file suit to protect a person’s right “(w]henever any person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth ...”
General Laws c. 12, § 1II provides that ”[a]ny person whose exercise or enjoyment of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or the laws of the commonwealth, has been interfered with, or attempted to be interfered with, as described in Section 11H, may institute and prosecute in his own name and on his own behalf a civil action for injunctive and other appropriate equitable relief as provided for in said section, including the award of compensatory money damages.”

General Laws, c. 152, §24 provides:
[an] employee shall be held to have waived his right of action at common law ... in respect to an injury that is compensable under this chapter, to recover damages for personal injuries, if he shall not have given his employer, at the time of his contract for hire, written notice that he claimed such right..."