Dortch-Okara, J.
This matter comes before the court on Defendants’ WearGuard Corporation (“Wear-Guard”) , Bruce Humphrey and Anne Marie Huie (collectively, “Defendant”) motion for summary judgment. The underlying action was brought by the plaintiff, Geralyn Dann (“Dann”) against Defendant in the form of three claims: wrongful discharge by WearGuard of *609 Dann’s at-will employment (Count I) and intentional interference with advantageous relations by WearGuard employees, Bruce Humphrey (“Humphrey”) and Anne Marie Huie (“Huie”) (Count II and III, respectively).[2] Defendant now moves for summary judgment on several grounds, among them that there is no applicable public policy which protects Dann as an at-will employee from being discharged and, in the absence of such policy, any alleged interference by the defendant cannot be improper or malicious.
I. BACKGROUND
The following facts are undisputed for the purposes of this motion.
Dann was an at-will employee of WearGuard holding the position of director of the company’s on-site day care program (the “Center”) since 1984. Huie was employed by WearGuard as a secretary since 1992 and has at times worked primarily for WearGuard’s President, Humphrey. Huie’s two children attended the Center. Dann’s claims concern several incidents involving Huie’s children at the Center.
In January or February of 1994, Huie was asked to pick up her children since one child was ill. The lead teacher in the sick child’s class observed that the child was lethargic and “cranky,” with red eyes and a fever. Huie complied with the request and returned both children to the Center the next day. Apparently, Huie’s leaving early caused some disruption to her work schedule or that of Humphrey.
Sometime after this incident, Dann was informed that any communications concerning day care matters for the Huie children should be made by the director of human resources, Lisa Zankman (“Zankman”) or by the children’s individual teachers. Dann was directed not to discuss day care issues or policies with Huie without first speaking to Zankman.
In May 1994, Huie’s younger child experienced episodes of dianrhea. During the morning, the child’s teacher informed Huie of the illness. Shortly thereafter, Huie gave the teacher a banana and told the teacher to give it to the child to improve the child’s symptoms. At approximately 3:30 p.m., Dann left the Center to speak with a WearGuard fitness center employee. Upon entering the fitness center, Dann observed Huie exercising. Dann became upset and went to speak with Zankman. At approximately 4:30 p.m., Huie picked up her children at the Center.
In June 1994, the teacher for Huie’s younger child believed that the child had conjunctivitis. The teacher notified Huie and the child was cared for in an area isolated from other children. Late in the day, Huie picked up the child from the Center.
In early June 1994, Zankman received the results of an audit conducted by an independent child care consulting firm. The results of the evaluation prompted Zankman to “los[e] confidence” in Dann and, consequently, Zankman asked Dann for her resignation on June 8, 1994. Dann was asked not to speak to anyone regarding this conversation. Sometime after this discussion, Zankman learned that Dann had told at least one employee of their conversation. Zankman realized that she could no longer trust Dann and accelerated her decision to terminate Dann. On June 30, 1994, Dann’s employment was terminated by Zankman.
II. DISCUSSION
This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(C). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to “judgment as a matter of law.” Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1980). A party moving for summary judgment who does not bear the burden of proof at trial must demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991); Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991). The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and “mere assertions of disputed facts ...” LaLonde v. Eisnner, 405 Mass. 207, 209 (1989). A court will grant summary judgment to the party entitled to judgment as a matter of law if both parties have moved for summary judgment and ‘there is no real dispute [concerning] the salient facts" or if a case only involves a question of law. Cassesso v. Commissioner of Correction, supra.
A. Dann’s Count I Claim: WearGuard’s Termination of Dann’s At-Will Employment Violated Public Policy.
As a general rule “[e]mployment at will is terminable by either the employee or the employer without notice, for almost any reason or for no reason at all.” Wright v. Shriners Hosp.for Crippled Children, 412 Mass. 469, 472, quoting Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9 (1988). However, very limited exceptions to this general rule are recognized. An at-will employee has a cause of action for wrongful discharge only if the termination violates a clearly established public policy. King v. Driscoll, 418 Mass. 476, 582 (1994), citing Flesner v. Technical Communications Corp., 410 Mass. 805, 810-811 (1991). The Supreme Judicial Court acknowledges clear violations of public policy when an employer terminates an employee “for asserting a legally guaranteed right (e.g., filing workers’ compensation claim), for doing what the *610 law requires (e.g., serving on a jury), or for refusing to do that which the law forbids (e.g. committing perjury.)” Wright v. Shriners Hosp.for Crippled Children, 412 Mass. 469, 472 (1992), quoting Smith-Pfeffer v. Superintendent of the Walter E. Femald State Sch. 404 Mass. 145, 146 (1989). Legal redress is also available in “certain circumstances for employees terminated for performing important public deeds, even though the law does not absolutely require the performance of such a deed.” Flesner v. Technical Communications Corp., 410 Mass. 805, 810-11 and 811 n.3 (1991) (“whistleblowing” is an example of an important public deed).
Dann contends that her termination resulted from her efforts to enforce the health care policy at the Center as required by the regulations governing day care providers promulgated by the Massachusetts Office for Children (the “OFC”). Dann asserts that the termination that resulted from these efforts was a violation of clear public policy.
It is the policy of the Commonwealth as provided for by G.L.c. 28A, §1,
to assure every child a fair and full opportunity to reach
his full potential by providing and encouraging services which strengthen family life and support families in their essential function of nurture for a child’s physical, social, educational, moral and spiritual development.
The purpose of chapter 28A, among others, is to “establish the administrative framework for and promote development of day care services in order to provide that such services shall be available in every community for all families which express a need for them” and “assure that every child shall in all circumstances be protected against all forms of neglect, cruelty, abuse and exploitation." G.L.c. 28A, §§1(4) & 1(6).
In accordance with G.L.c. 28A, the OFC is required to promulgate rules and regulations concerning the standards and requirements for licensure and approval of day care centers. The regulations are mandated to be “appropriate for the protection of the health, well-being and development of children” and are required to include provisions regarding health care and nutrition. G.L.c. 28A §10(c).
The OFC promulgated regulations governing the licensing and operation of day cares under 102 CMR 7.00 et seq. Program services and procedures are governed by 102 CMR 7.07. 102 CMR 7.07(16) provides that each licensed day care center “have a written health care policy which shall address all health aspects of the program, including staff responsibilities for emergency and preventative health measures . . . [including] . . . (f) a plan for the management of infectious diseases pursuant to 102 CMR 7.07(19).”
102 CMR 7.07(19) provides that the written plan for the management of infectious diseases include:
(a) Policies regarding the care of mildly ill children including special precautions the center will require for the following types of infectious diseases: gastro-intestinal, respiratory and skin or direct contact infections.
(b) Criteria regarding signs or symptoms of illness which will determine whether a child would be included or excluded from the center.
(c) Policies for dealing with a child who has already been admitted to the center and manifests any of the symptoms requiring exclusion as specified in 102 CMR 7.07(19)(b) until:
1. He or she can be taken home or suitably cared for elsewhere; or
2. The child has been evaluated by a physician, physician’s assistant or nurse practitioner and is considered to pose no serious health risk to himself or herself or to other children.
In addition, licensed centers are required under 102 CMR 7.07(21) to have a plan for the care of mildly ill children. 102 CMR 7.07(21) provides that the plan include meeting individual needs for food, drink, rest, play materials, comfort and appropriate indoor activity and permits the care of mixed age groups of mildly ill children cared for in a separate space or room.
While the Center is required to adopt a policy in accordance with the OFC regulations, nothing under G.L.c. 28A or 102 CMR 7.00 et seq. requires the Center as a licensed facility to exclude a child for signs or symptoms of infectious disease. The language of G.L.c. 28A fails to address the specific care required in order to promote the development of day care services. In addition, 102 CMR 7.07(19) simply provides that the Center adopt a policy which establishes the criteria for such a decision. Mildly ill children, moreover, may be cared for within the licensed center and are not required to be excluded under the OFC regulations.
Even if the OFC required licensed facilities pursuant to regulation to exclude children from attendance for specified infectious diseases or illness, such regulation would not be persuasive authority to establish a clear public policy. The Supreme Judicial Court has “never held that a regulation governing a particular profession is a source of well-defined public policy sufficient to modify the general at-will employment rule.” Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 474 (1992).
Dann relies on Hobson v. McLean Hospital Corp., 402 Mass. 413, 416 (1988), where the Court allowed the plaintiffs complaint to survive a motion to dismiss by alleging wrongful termination resulting from the employee’s enforcement of certain state and municipal safety laws, regulations and ordinances. Unlike the employee nurse in Hobson, Dann bases her claims solely on a regulatory authority which requires the Center to manage infectious diseases, but does not mandate that a mildly ill or infectious child be sent home under specified conditions. While G.L.c. 28A *611 establishes a broad public policy in favor of encouraging services which strengthen family life and support families in their essential function of nurture, the regulations promulgated pursuant to c. 28A are too tenuous to be the basis for a violation of clear public policy. In the absence of a violation of statutory authority, the plaintiff is unable to rely upon general regulations to establish a clearly defined public policy. Wright v. Shriners Hosp. for Crippled Children, 412 Mass 469, 474 (1992). Moreover, while G.L.c. 28Amay support a “well-defined” public policy for purposes of a motion to dismiss, it is not sufficient to withstand a motion for summary judgment.
The public policy exception to the at-will rule is not extended to protect employees performing “appropriate, socially desirable duties.” Wright v. Shriners Hosp. for Crippled Children, supra at 475 (1992), quoting SmithPfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 150 (1989). While the proper administration of health care policies in day care centers may be a matter of some public interest, it is not a well-established public policy. Wright v. Shriners Hosp. for Crippled Children, supra at 474-75 (discharge of director of nursing who reported on issues detrimental to health care is not a violation of well-established public policy); Srrdth-Pfejfer v. Superintendent of the Walter E. Fernald State Sch., supra at 148-51 (no violation of a well-established public policy by an employer who discharged employee for actions in opposing a management restructuring plan where employee claimed that restructuring would “compromise service delivery to the residents” and “constituted a threat to the well-being of the institution and its residents”).
The plan adopted by the Center was an internal matter and, as such, cannot be the basis of a public policy exception to the at-will rule. Wright v. Shriners Hosp. for Crippled Children, supra at 474 (1992), citing Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 146 (1989). Therefore, Dann’s at-will employment was lawfully terminated by WearGuard.
B. Dann’s Count II and III Claims: Intentional Interference with Advantageous Relations.
In an action for intentional interference with advantageous or contractual relations against a supervisor who discharges or recommends discharge of an employee, the plaintiff must prove that (1) he or she had a contract or business relationship with a third parly; (2) the defendant knowingly induced the third party to break that contract or relationship; (3) the defendant’s interference, in addition to being intentional, was improper in motive or means; and (4) the plaintiff was harmed by the defendant’s actions. Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992), quoting G.S. Enters, Inc. v. Falmouth Marine, Inc., 410 Mass. 262, 111 (1991), citing United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812-817 (1990).
A supervisor is not liable for interference with the employee’s contract or business relations with the employer unless the supervisor’s actions were motivated by actual malice, “i.e., for a spiteful, malignant purpose, unrelated to the legitimate corporate interest.” Wright v. Shriners Hosp. for Crippled Children, supra at 476 (1992), quoting Serveni v. Star Sportswear Mfg. Corp., 24 Mass.App.Ct. 428, 432-33 (1987); Galdauckas v. Interstate Hotels Corp., 901 F.Supp. 454 (D.Mass. 1995).
WearGuard had the right to terminate Dann as an at-will employee in the absence of a violation of a well-established public policy. It follows, accordingly, that any alleged interference by Humphrey and Huie cannot be improper or malicious if motivated by Dann’s actions in enforcing the Center’s health care policy. Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 476 (1992). The purpose in discharging Dann was not unrelated to a legitimate corporate interest. Therefore, plaintiffs failure to establish that Huie or Humphrey acted pursuant to improper motive or means deprives her of a right of action against Huie or Humphrey for intentional interference with advantageous relations.
Defendant’s motion for summary judgment is allowed.
ORDER
For the foregoing reasons, it is ORDERED that summary judgment enter for defendants WearGuard Corporation, Bruce Humphrey and Anne Marie Huie.

WearGuard has brought counterclaims against Dann and additional counterclaim defendants, Melissa Walker and Dann-Walker, Inc., for deceit, breach of fiduciary and other duties, unjust enrichment, tortious interference with contractual relations and violations of G.L.c. 93A.