Sosman, J.
Plaintiff Jane Cullinane has brought the present action complaining that her former employer, Massachusetts Institute of Technology (“MIT”), discriminated against her on account of her handicap and retaliated against her for filing an internal grievance with respect to her claim. MIT has filed a motion for partial summary judgment asserting (1) that plaintiff is estopped from claiming that she is a “qualified handicapped person” and (2) that MIT, as a charitable organization, is protected by the $20,000 statutory cap, G.L.c. 231, §85K. MIT has also filed a separate motion to strike plaintiffs claims of retaliation, arguing that she failed to exhaust her administrative remedies with respect to any claim of retaliation and that, as to one aspect of her retaliation claim, she fails to state a claim. For the following reasons, the motion for summary judgment is DENIED and the motion to strike is ALLOWED.
Procedural Background
The present case was filed in January 1995, with the original Tracking Order setting a December 26, 1995 deadline for the filing of any summary judgment motions. That deadline was later extended by the court to February 26, 1996. MIT filed a summary judgment motion within the extended deadline, but did not raise in that motion any of the issues and arguments that are now raised in the motion for partial summary judgment and the motion to strike. On May 24, 1996, the court (Neel, J.) denied MIT’s original summary judgment motion.
Plaintiff argues, correctly, that the present motions, filed shortly prior to the commencement of trial, are grossly untimely. Plaintiff further argues, also correctly, that the filing of “piecemeal” summary judgment motions is disfavored. MIT has not put forward any justification for the belated filing of these motions, nor has it put forward any explanation as to why it did not include all its arguments in the timely summary judgment motion that it did file back in February 1996. On procedural grounds alone, both motions should be denied.
However, despite these glaring procedural defects, the court will address the merits of certain arguments raised in the motions. The parties anticipate that the trial of this matter will be lengthy and complex. While defendant has foregone its right to raise these issues by way of motion for summary judgment, the same issues would come up at trial in various guises — as the basis for evidentiary objections, by way of motion for directed verdict, and in requests for jury instructions. Addressing the merits of these issues prior to the commencement of a complex trial will help expedite trial itself. For that reason, and for that reason alone, the court will entertain and rule on these motions. In so doing, the court does not condone MIT’s conduct in filing belated and piecemeal dispositive motions.
Facts
Plaintiff Jane Cullinane was employed part-time at MIT’s Clinical Research Center as a systems analyst from February 10, 1992 through June 24, 1994. Much of her work required the use of a computer keyboard and mouse. By late 1992, Cullinane was suffering from repetitive strain injury, including carpal tunnel syndrome. In the winter of 1993, she requested various items of equipment and changes to her work station to accommodate her medical needs. Some modifications were provided later that spring, but Cullinane contends that the modifications were belated and still inadequate.
Cullinane’s condition worsened, and she went on a medical leave of absence in late October 1993. While on leave, Cullinane had surgical operations on both hands. Her treating physician permitted her to return to work in late March 1994 on a reduced schedule. *288 Upon her return, she requested additional equipment and further modifications to her work station. Based on her doctor’s advice, she also requested a Monday, Wednesday and Friday schedule so that she could have a full day off in between each working day to let her hands rest and recover. MIT insisted that she work Tuesday, Wednesday and Friday and did not provide her with the equipment and work station modifications she requested. Cullinane told MIT that she would not work a schedule that was contrary to her doctor’s advice. MIT thereupon terminated Cullinane effective June 24, 1994.
In May 1994, prior to her termination, Cullinane had filed internal administrative complaints against three supervisors/administrators in the Clinical Research Center. In her amended complaint, she contends that her termination was, at least in part, in retaliation for having filed these internal grievances.
On July 11, 1994, plaintiff filed a complaint with the Cambridge Human Rights Commission (“CHRC”) complaining of employment discrimination based on disability.[1] Although filed pro se, the complaint (consisting of three single-spaced typed pages) is detailed as to the chronology of events, precise dates, names of individuals involved, etc. With regard to the actual termination, the complaint chronicles Cullinane’s receipt of a May 23, 1994 letter requiring her to commence a twenty-hour work week on a Tuesday, Thursday and Friday schedule by June 15 or face termination; her response by letter of June 2, 1994 reiterating her requests for accommodation; a meeting with the personnel department and the EEOC coordinator; a June 15, 1994 letter from a physician at MIT supporting Cullinane’s accommodation requests; a further June 21, 1994 letter from that same MIT physician; and receipt of a June 23, 1994 letter terminating Cullinane due to her “unavailability” to work on the schedule set by MIT. Nowhere in that detailed chronology of events leading up to her termination, and nowhere else in her complaint as filed, did Cullinane indicate that she had filed any form of grievance or complaint or suggest that she had been subject to any form of retaliation.
On August 31, 1994, Cullinane sent a four-page single-spaced letter to the CHRC (apparently in response to MIT’s response to her complaint). At the very end of that letter, Cullinane reports that she had filed “harassment complaints” with the personnel office. Her letter complained that “(n]one of these complaints were [sic] investigated while I was employed at MIT.” At no point in that letter did Cullinane state or even suggest that her termination (or any other action taken with respect to her employment) was in retaliation for having filed those “harassment complaints.”
Following her termination, plaintiff filed for workers’ compensation, alleging that the injury to her hands was work related. At the hearing on her claim in August 1994, plaintiff testified as to the extent of her disability. Her doctor testified that Cullinane was totally disabled from the time of her hand surgeries (December 1993 and January 1994) until her return to work in March 1994 and that, since March of 1994, she was partially disabled in that she could not work a full-time schedule. The Administrative Judge found that Cullinane was totally disabled from June 24, 1994 until July 22, 1994, and that she was partially disabled thereafter. Workers compensation benefits were awarded accordingly.
In February 1995, Cullinane filed an application for Social Securiiy disability benefits. In that application, Cullinane stated that she had become “unable to work because of my disabling condition on October 23, 1993" and that she was ’’still disabled." Cullinane had also filed a “Disability Report” with the Social Security Administration in which she stated:
I was told not to type, then restricted typing, then not to type, then type in the absence of pain. A series of equipment was requested, delayed & denied. I had 2 surgeries & eventually was denied equipment and schedule to try to overcome the disability and I was terminated based on my disability.
In March 1995, Cullinane also submitted a letter to the Disability Determination Services unit of the Massachusetts Rehabilitation Commission explaining that she was disabled and was applying for Social Security disability benefits but that she had “always been willing to work with reasonable accommodations required.”[2] She also submitted written opinions from her doctors pertaining to the accommodation she had requested of MIT back in the winter and spring of 1994. The Social Security Administration determined that Cullinane was able to return to her former work as a systems analyst and accordingly denied her request for Social Security disability benefits. Cullinane sought reconsideration of the denial of benefits. On reconsideration, benefits were again denied on the ground that her condition did not prevent her return to work as a systems analyst.
Plaintiff filed the present civil action complaining of handicap discrimination on January 30, 1995. Her complaint as originally filed did not contain any claim of retaliation. On November 24, 1995, plaintiff moved to amend her complaint to add the allegation that defendant “discharged her in retaliation for asserting her right to reasonable accommodation and interfered with her exercise of her rights pursuant to this chapter in violation of §§4(4) and 4(4A).” That motion was allowed unopposed on July 10, 1996.
Discussion
I. Estoppel
MIT contends that Cullinane’s application for Social Security disability benefits, in which she claimed that she was disabled since October 23, 1993, now estops her from claiming that she was “able to perform the essential functions of the job” and thus prevents her *289 from proving that she is a “qualified handicapped person.” G.L.c. 151B, §1(16).
The filing of a claim for disability benefits, despite its inherent assertion that the employee can not perform his or her former employment, does not automatically prevent that employee from bringing a claim for handicap discrimination. Labonte v. Hutchins & Wheeler, 424 Mass. 813, 816-17 (1997). Rather, the court should review the timing of the application in relation to the termination of employment and the actual contents of any statements submitted in the application to determine whether, in context, the application for benefits actually establishes that there is no disputed factual issue as to the plaintiffs inability to perform the essential functions of her job. Id. at 817-19.
In the present case, Cullinane’s application for disability benefits does not constitute an unequivocal statement that she is unable to perform her job. Her answers on the Disability Report form included the express assertion that MIT’s alleged failure to provide accommodation (in the form of both equipment and schedule) prevented her from “overcom[ing] the disability.” Her letter to the Massachusetts Rehabilitation Commission expressly stated that she was “willing to work with reasonable accommodations” and, by enclosed memos from physicians, advised the Commission exactly what accommodations she needed. Where the materials submitted by Cullinane as part of the processing of her application state (or at least strongly imply) that she would be able to work with some accommodation, she should not be estopped from claiming, in this handicap discrimination case, that she was able, with reasonable accommodation, to perform the essential functions of her former job.
Labonte also points out that an application for disability benefits filed after the employee has been terminated is distinguishable from a case where the employee has filed for such benefits prior to being terminated. Id. at 818-19. If, in response to being asked to return to work, an employee asserts that he is completely disabled, he can not later claim that he could have returned to work with accommodation. See Beal v. Selectmen of Hingham, 419 Mass. 535 (1995); August v. Offices Unlimited, Inc., 981 F.2d 576 (1st Cir. 1992). However, if an employee requests accommodation, is denied accommodation, is terminated and only then seeks disability benefits, there is no simultaneous inconsistency in the plaintiffs position. Rather, the employee has originally asserted an ability to work with requested accommodation and has sought the disability benefits only after finding that the allegedly reasonable accommodation will not be provided. See Labonte, supra; D'Aprile v. Fleet Services Corp., 92 F.3d 1 (1st Cir. 1996).
MIT seeks to distinguish Labonte and D'Aprile on the ground that Cullinane’s application for benefits claimed an onset of disability as of October 1993, a date nine months before she was fired. On the facts of this case, at least as viewed in the light most favorable to plaintiff, the assertion of disability dating from October of 1993 is not inconsistent with the position taken in this lawsuit. Plaintiff was on medical leave beginning in October 1993, followed by surgeries in December 1993 and January 1994. She agrees that, from October 1993 until her doctor cleared her to return to work in March 1994, she was not able to perform the essential functions of her job. She contends that she could have performed those essential functions with reasonable accommodation from March 1994 onward. The statement in her form benefits application that she “became unable to work because of my disabling condition on October 23, 1993" does not contradict plaintiffs assertion that, after recovering from her surgeries, she was able to perform the essential functions of her job, with reasonable accommodation, in March, April and June of 1994.
MIT also argues that plaintiffs testimony at the hearing on her workers’ compensation claim estops her from claiming that she was able to perform the essential functions of her job at MIT. The transcript sections submitted by MIT in support of this argument pertain to Cullinane’s limitations in her household duties and recreational activities. The only reference to work activities contained in that transcript is Cullinane’s assertion that she was having “difficully” typing in June 1994 and that typing made her pain “worse.” Nowhere in that transcript does Cullinane state that she was unable to perform the functions of her MIT job.[3] Again, the actual contents of the statements made in support of her workers’ compensation claim do not demonstrate an absence of factual dispute as to her ability, with accommodation, to perform the essential functions of her job.
II. Statutory cap on tort damages
Resolution of MIT’s argument with respect to G.L.c. 231, §85Kis not necessary to expedite or clarify trial. As such, there is no reason for the court to entertain this aspect of MIT’s belated motion for partial summary judgment. The protection of G.L.c. 231, §85K was pleaded in MIT’s answer. In the event that plaintiff prevails and is awarded damages in excess of $20,000, MIT’s arguments may be heard at that time. Accordingly, that aspect of MIT’s motion for partial summary judgment is denied without prejudice.
III. Failure to exhaust administrative remedies
Complaints of employment discrimination must be filed with the MCAD within six months of the alleged act of discrimination. G.L.c. 151B, §5. Absent timely filing of an administrative complaint of discrimination, plaintiff may not pursue her c. 151B claims in court. Sereni v. Star Sportswear Manufacturing Co., 24 Mass.App.Ct. 428, 430, review denied, 400 Mass. 1107 (1987).
*290 Cullinane filed a timely administrative complaint alleging that she had been terminated on account of her handicap. At no time did she state or even suggest to the agency that her termination was the product of retaliation for her earlier filing of internal grievances at MIT. Her administrative complaint did not even inform the agency that she had ever filed such internal grievances. A later letter informed the agency that such grievances had been filed, but the brief reference to those grievances did not suggest that her termination was causally related to the filing of those grievances. Rather, Cullinane merely complained that MIT had not investigated her grievances. In context, the reference to these uninvestigated grievances was used as a (further) example of MIT’s alleged inattention to her repeated requests for accommodation.
Even if a particular form of discrimination is not expressly stated in an administrative complaint, a later civil action may include complaints of that type of discrimination if the original charge should have alerted the agency to that alternative basis for discrimination. The scope of the civil action includes all matters that would have been within the scope of the expected agency investigation of the charge, even if the matter is not expressly referenced in the charge and even if the actual investigation was narrower (or nonexistent). See Powers v. Grinnel Corp., 915 F.2d 34, 49 n.4 (1990); Manos v. School Committee of Town of Wakefield, 553 F.Sup. 989, 992 (D.Mass. 1983); Conroy v. Boston Edison Co., 758 F.Sup. 54, 58 (D.Mass. 1991).
In the present case, Cullinane’s original administrative complaint would not have alerted the agency to any issue of retaliation and there was no reason to expect that the investigation of Cullinane’s complaint would have included investigation of any retaliation stemming from her filing of internal grievances. Where her charge did not even alert the agency that such grievances had been filed, the investigation could not possibly include an examination of whether retaliation for having filed those grievances played any role in her termination.[4] Cullinane’s only reference to the grievances came in a later letter to the CHRC, which merely told CHRC that she had filed such internal complaints and that they had been ignored.[5] That single reference did not even hint at retaliation.
Cullinane points to cases where a civil action has included claims of retaliation even though no claim of retaliation was presented to the administrative agency. Those cases all involve alleged retaliation occurring after the filing of the original charge, the claim being that the employer has retaliated against the employee for having filed the original charge. By definition, conduct that occurs after the filing of the original charge can not be included within it. Where that later conduct includes alleged retaliation, courts have generally viewed it as an exercise in futility (and a needless expense and delay) to require the plaintiff to file a second administrative claim in order to pursue a civil action alleging retaliation for having filed the first claim. See Smith v. Mitre Corp., 949 F.Supp. 943, 946-48 (D.Mass. 1997) and cases cited therein.
In the present case, however, the retaliation that Cullinane now alleges in her amended complaint all occurred prior to the filing of her administrative complaint. This is not a case where the retaliatory termination allegedly flowed from the filing of the administrative complaint itself. Cullinane had already been fired, and no further retaliation is alleged to have occurred after the filing of the administrative complaint. Where the facts giving rise to plaintiffs retaliation claim all occurred prior to the time of her administrative complaint, and were known to Cullinane at that time, there is no reason to excuse her from the requirement that she bring those facts, or at the very least her suspicions of retaliation, to the agency’s attention in the original administrative complaint.
In addition to a claim of retaliation for having filed her internal grievances, Cullinane claims that her termination was “in retaliation for asserting her right to reasonable accommodation.”[6] If by this Cullinane means that she was fired for having requested reasonable accommodation, that contention is subsumed in the underlying discrimination claim — i.e, that she made request(s) for reasonable accommodation which her employer refused to provide, thus making it impossible for her to perform her job, and thus leading to her termination. Termination of a qualified handicapped employee who requires reasonable accommodation is substantive discrimination on the basis of handicap. Relabeling it as a form of “retaliation” does not make it a retaliation claim under G.L.c. 151B, §4(4). That subsection of the statute prohibits discrimination against any person “because he has opposed any practices forbidden under this chapter or because he has filed a complaint, testified or assisted in any proceeding under Section five.” An employee’s request for reasonable accommodation of her handicap is not the equivalent of “opposing] any practices forbidden” by c. 151B. Again, an employer who fails to provide reasonable accommodation to a qualified handicapped person, thus precipitating the employee’s departure or removal from the position, has unlawfully discriminated against that employee on the basis of handicap. There is no reason to read §4(4) in a way that would automatically make every handicap discrimination case a case of retaliation. This aspect of Cullinane’s retaliation claim fails to state a claim.
ORDER
For the foregoing reasons, Defendant’s Motion for Partial Summary Judgment is DENIED and Defendant’s Motion to Strike Plaintiffs Retaliation Claim is ALLOWED.

 Pursuant to an agreement with the Massachusetts Commission Against Discrimination ("MCAD”), the CHRC receives and investigates charges of discrimination alleged to have *291 occurred in the City of Cambridge.

 That unit within the Massachusetts Rehabilitation Commission is involved with the handling and initial determination of Social Security disability benefits, although its precise role is not explained on this record.

 The medical evidence submitted by Cullinane in support of her workers’ compensation claim consisted of opinions from two doctors that she was totally disabled following her hand surgeries and then only partially disabled from March 1994 on. That partial disability was described as preventing her from working on a full-time basis. Inasmuch as her MIT job was not a full-time job, the partial disability described by her doctors would not have prevented Cullinane from performing her job at MIT. The Administrative Judge’s finding that Cullinane was “totally disabled” from June 24, 1994 to July 22, 1994 was not based on the medical evidence that Cullinane presented, as both her physicians rated her as only “partially disabled” during that period. From the portions of the administrative record submitted with the present motion, the court is unable to determine what that finding of temporary total disability was based on.

 Cullinane asks the court to read her administrative complaint broadly because she was pro se at the time. Cullinane is a highly intelligent and articulate advocate on her own behalf, as evidenced by the detail and clarity of her administrative complaint. More importantly, no matter how broadly read, that detailed complaint simply says nothing about any filing of a grievance or complaint at any time prior to the filing of the administrative charge.

 That letter was written after the evidentiary hearing on Cullinane’s claim for workers’ compensation, at which Cullin-ane was represented by counsel. Although it is unclear at what point Cullinane first sought legal assistance with regard to issues surrounding her disability and her termination from MIT, she had access to counsel within a month of the time her administrative complaint of discrimination was filed. Although pro se submissions are to be read with liberality, that liberality is not quite so broad when there is in fact counsel available to and assisting the complainant.

 This theory, if it states a claim, was within the scope of the facts alleged in Cullinane’s administrative charge, even though the word “retaliation" was not included.